**Anqueneet STARKS**

v.

**CITY OF MINNEAPOLIS, et al.**

No. 4–96–CV–902.

United States District Court,
D. Minnesota,
Fourth Division.

May 14, 1998.

Larry Eugene Reed, Dannia Linn Edwards, Hassan & Reed, Minneapolis, MN, for Anqueneet Starks, plaintiffs.

Peter William Ginder, Mpls. City Atty., Minneapolis, MN, for Minneapolis, City of, Robert Olson, Chief of Police, Scott Olson,

Officer, Katherine Ireland, Officer, David Roiger, Officer, defendants.

## ORDER

ROSENBAUM, District Judge.

Plaintiff claims her rights were violated when a vehicle in which she was riding was stopped by Minneapolis police officers. Defendants reply that they are immune from suit because they are protected by both qualified and official immunity, and seek summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). The Court heard oral argument on November 26, 1997.

### I. *Background*

The parties do not dispute that an incident occurred in the early morning hours on August 6, 1995. Plaintiff, Anqueneet Starks, was riding in a vehicle driven by Michael Johnson, heading eastbound toward downtown Minneapolis on Olson Memorial Highway. Two Minneapolis police officers, David Roiger and Scott Olson, were riding in a marked squad car at the time. The officers stopped the Johnson/Starks vehicle at the corner of 7th Street and Olson Memorial Highway. The exact reason for the stop is in dispute; plaintiff claims the vehicle was stopped because of a license plate problem; the officers claim Mr. Johnson ran a red light. The Court judicially notes that the vehicle's location at the time of the stop was approximately a three to five minute nighttime drive from the Minneapolis Police Department's City Hall headquarters.

After making the stop, the officers approached the car to speak with the occupants. The officers claim they detected an odor of burnt marijuana in the car. The officers first asked Mr. Johnson to step from the car. He was searched and placed in the squad car. At the same time, Officer Olson states he observed plaintiff inside the car moving her hands along the side of the car seat. In response, he asked plaintiff to step from the vehicle, and he then performed a light frisk on the outside of plaintiff's clothing, touching her back, stomach, legs, and arms. He found nothing. Officer Olson then brought plaintiff to the squad car and placed her in the back seat with Mr. Johnson. Unbeknownst to plaintiff or Mr. Johnson, the squad car was equipped with an audio tape recorder, which the officers activated.

The officers then searched Mr. Johnson's vehicle, and claim to have found a small container which appeared to have marijuana residue inside. After completing the vehicle search, the officers listened to the tape.

The tape revealed a conversation in which plaintiff told Mr. Johnson that the officers had already searched her and did not find "it." At this point, the quality of the recording degraded. However, the Court finds, for the purposes of this motion only, that the officers could well have perceived plaintiff as saying she was going to hide "it" in the squad car. Having heard this, the officers detained plaintiff outside the squad car while they searched the interior for the drugs they believed to be in plaintiff's possession. Having found no drugs in the squad car, but believing plaintiff might still possess them, the officers called for a female officer to assist them at the scene with a more thorough search of plaintiff.

Officer Katherine Ireland arrived in response to the call. She was advised of the situation and listened to the tape. Plaintiff states she heard Officers Roiger and Olson tell Officer Ireland they suspected plaintiff still had the marijuana on her. Officer Ireland had plaintiff step over to the curb and place her hands on the car. Officer Ireland proceeded to pat search plaintiff's chest, bra area, stomach, thighs, and the inside of her shorts. Plaintiff voluntarily removed her shoes so they could be searched.

At this point the parties' stories diverge. Plaintiff claims the male officers told Officer Ireland to make plaintiff remove her clothing. This is denied by all of the officers. It is agreed, however, that Officer Ireland then moved plaintiff some distance away from the stopped vehicles. The area to which plaintiff was moved was south across Royalston Avenue, behind a tree, but within restricted sight of the 7th Street/Olson Memorial Highway intersection.

Here, plaintiff claims she was ordered to take her pants down. Officer Ireland, however, claims plaintiff lowered her pants and underwear voluntarily, and without direction, at which time she told plaintiff that removing her pants was not necessary and to pull them up. Plaintiff alleges, and the officers deny, that Officers Roiger and Olson laughed and pointed at her when her pants were down.

Officer Ireland found no marijuana or any contraband in plaintiff's possession. Mr. Johnson, whose license had previously been suspended, was cited for driving after suspension. Since Mr. Johnson was not legally permitted to drive, the car was towed, and plaintiff and Mr. Johnson were released by the officers.

Based upon her version of the facts, plaintiff filed a ten count complaint against the City of Minneapolis, Chief of Police Robert Olson, and Officers Olson, Roiger, and Ireland. Plaintiff alleges violations of both the United States and Minnesota Constitutions, as well as tort and statutory claims arising from what she characterizes as an unwarranted public strip search. Defendants move for summary judgment.

## II. *Discussion*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson,* 477 U.S. at 248–49; *see also Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir.1992). In reviewing the evidence, the Court must view the facts alleged in the non-moving party's pleadings and affidavits as true, and resolve all factual disputes in favor of the non-moving party. *See Radaszewski v. Telecom Corp.,* 981 F.2d 305, 310 (8th Cir.1992).

The defendants argue, even assuming plaintiff's version of the facts to be true, that plaintiff's federal claims are barred by the doctrine of qualified immunity and the state law claims are barred by the doctrine of official immunity.

■ The purpose of the federal qualified immunity doctrine is to "allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes." *Greiner v. City of Champlin,* 27 F.3d 1346, 1351 (8th Cir.1994). Qualified immunity protects police officers from liability if a reasonable officer could have believed his or her conduct was lawful in light of clearly established law and the information possessed by the officers at the time of their actions. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "An official loses immunity if, first, the law he violated was clearly established at the time of the violation, and second, the applicability of the law to his particular action was evident." *Greiner,* 27 F.3d at 1351 (citing *Anderson,* 483 U.S. at 640). The issue of qualified immunity is a question of law for the court to determine. *See Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991).

■ The doctrine of official immunity, which defendants claim precludes the Minnesota state claims, is similar to federal qualified immunity. Where public duties call for the exercise of professional judgment or discretion, government officials are entitled to immunity from state claims unless the officials are guilty of a willful or malicious wrong. *See Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn.1992). The doctrine of official immunity bars liability unless a plaintiff proves that a police officer willfully violated a known right. *See Rico v. State,* 472 N.W.2d 100, 107 (Minn.1991). This narrow exception applies when an officer intentionally commits an act that he or she had reason to believe is prohibited. *See id.* at 107. Questions of official immunity, too, are appropriately resolved by summary judgment. *See id.*

■ Plaintiff and Mr. Johnson were pulled over by Minneapolis police officers. The

stop was for either a license plate violation or running a red light. Under either circumstance, the Court finds the traffic stop was legitimate. An officer is certainly permitted to stop a motor vehicle for a perceived motor vehicle violation. *See State v. Duesterhoeft,* 311 N.W.2d 866, 867 (Minn.1981). Once stopped, Officer Olson observed plaintiff making what could reasonably be perceived as furtive movements along the side of her car seat, giving him reason to ask her to step from the vehicle. *See Maryland v. Wilson,* 519 U.S. 408, ——, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

■ The Court finds it was reasonable for Officer Olson to perform the initial light frisk of plaintiff after the traffic stop to secure his personal safety. *See id.* The Court further considers it reasonable for the officers to have investigated the marijuana odor.

■ The Court has listened carefully to the squad car tape recording and concludes it can reasonably be perceived to reveal plaintiff saying she still had "it" and was going to stash the "it" in the squad car. Under these circumstances, it was reasonable to ask Officer Ireland to conduct a more thorough search of plaintiff for contraband.

■ The Court now turns to the major issue in the case: whether Officer Ireland's conduct was within accepted constitutional bounds, assuming she knowingly conducted an on-street strip search. The Court holds that a reasonable police officer would not be justified in assuming an on-street strip search was within the constitutional boundaries defined by the Fourth and Fourteenth Amendments of the United States Constitution, or Article I, Section 10, of the Constitution of the State of Minnesota. The Court determines that such an action, if conducted, is not entitled to the protection of federal "qualified" or state "official" immunity.

As one might expect, there is very little case law considering the use of on-street strip searches. The Court considers the paucity of case law as reflective of the natural assumption that these things simply do not occur. By way of example, the United States Supreme Court, when considering the governmental interest underlying a stationhouse search of an arrestee, stated in *Illinois v. Lafayette,* 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983) that, "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street." Other courts have explicitly recognized that a strip search on a public street is not justified. "Probable cause that an arrestee is hiding something on his body does not justify conducting on a public street a strip search or some search akin to one." *United States v. Bazy,* Nos. 94–40018–01–SAC, 94–40018–02–SAC, 1994 WL 539300, at *8 (D.Kan. Aug.29, 1994).

Similarly, the Fourth Circuit upheld a strip search which occurred in a police van, finding it was not unconstitutional because "the search did not occur on the street subject to public viewing." *United States v. Dorlouis,* 107 F.3d 248, 256 (4th Cir.1997). Under very unusual circumstances, the D.C. Circuit upheld a strip search on a public street when officers had deduced that the defendant was trying to push drugs into his buttocks. But even under such circumstances, that circuit stated, "We wish to make it clear, however, that such public intrusions should not be the norm. Ordinarily, when police wish to search the private areas of an arrestee's person incident to arrest, they should first remove the arrestee to a private location— i.e., a private room in the stationhouse." *United States v. Murray,* 22 F.3d 1185 (D.C. Cir.1994) (unpublished table opinion) (text available at 1994 WL 119009) .[1]

■ On February 19, 1998, this Court, accompanied by the respective parties and counsel, conducted a site visit at the location where the stop and search took place. The Court determines that the location where plaintiff removed her trousers, whether voluntarily or at the officer's direction, was a

---

**1.** D.C.Cir. Rule 28(c) states: "Unpublished orders or judgments of this court, including explanatory memoranda and sealed opinions, are not to be cited as precedent.... Counsel may refer to an unpublished disposition, however, when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant."

site lacking the privacy to which a person is entitled if a strip search is to be required. It lies near a major public street intersection and lacks even that vestige of privacy found in a police van or the stationhouse. At the time the strip search was allegedly conducted, the officers knew conclusively that plaintiff did not have a firearm or a weapon because she had already been searched and patted down twice—once before being placed into the squad car, and again by Officer Ireland prior to the claimed strip search.

Even assuming the tape recording reveals that plaintiff still possessed "it," whatever she possessed was small enough in amount that it had not been perceived by feel. The only odor the officers had detected was that of burnt marijuana. In Minnesota, the possession of a small amount of marijuana is only a petty misdemeanor. Finally, the very short drive time to the Downtown police station obviates any claim of exigent circumstances.

 The Court explicitly states that it makes no finding as to whether or not a strip search was actually ordered by any police officer in this case. The Court does, however, determine that if one was ordered, the officer who ordered it would not be entitled to federal "qualified" or state "official" immunity. The events which took place in the early morning hours on August 6, 1995, are much in dispute and must be determined by a jury. As to these matters, the Court finds that genuine issues of material fact remain, rendering summary judgment inappropriate.

### III. *Conclusion*

For the reasons stated above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

Defendants' motion for summary judgment [Docket No. 27] based on immunity from suit is denied.