STATE OF NORTH CAROLINA v. JOSE FERNANDO MEDINA, Defendant

No. COA10-71

(Filed 20 July 2010)

## 1. Search and Seizure— consent—non-English speaking defendant

The trial court did not err by not suppressing a warrantless search based on an involuntary or equivocal consent where defendant did not speak English and the officer had studied Spanish but was not fluent. Defendant gave logical, intelligent and detailed answers to the officer's questions; under the totality of the circumstances, there was competent evidence to support the court's findings, which supported the court's conclusions that defendant voluntarily consented to the search and did not withdraw that consent.

## 2. Confessions and Incriminating Statements— Miranda rights—waiver—non-English speaker

Defendant knowingly waived his *Miranda* rights and consented to speak with detectives where he did not speak English and the officer had studied Spanish but was not fluent. The evidence shows that the officer and defendant communicated effectively and that defendant gave coherent, logical, and appropriate answers. Moreover, the record reflects that defendant read the rights in Spanish, initialed each one, and signed the form.

## 3. Appeal and Error— probable cause to search—not considered—decided elsewhere

A discussion of whether the police had probable cause to search defendant's vehicle was not necessary where it was determined elsewhere in the opinion that defendant had consented.

Appeal by defendant from order entered 29 May 2008 by Judge Calvin Murphy in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 June 2010.

*Roy Cooper, Attorney General, by Jay L. Osborne, Assistant Attorney General, for the State.*

*M. Alexander Charns, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged in bills of indictment with two counts of trafficking in heroin in violation of N.C.G.S. § 90-95(h)(4), and possession with intent to sell or deliver cocaine in violation of N.C.G.S. § 90-95(a)(1). Defendant moved to suppress evidence seized from the 13 April 2007 search of his vehicle and any statements made by him on the same day.

The evidence presented at the motion to suppress hearing tended to show that on 13 April 2007, Charlotte-Mecklenburg Police Department ("CMPD") established surveillance of the Burger King parking lot located at the intersection of Brookshire Boulevard and Hoskins Road. CMPD was acting on information received from a "confidential source" that a Hispanic male driving a burgundy Mitsubishi with chrome wheels would arrive at approximately 8:30 a.m. and would be in possession of narcotics. Defendant arrived in the parking lot at approximately 9:10 a.m. driving a 2001 burgundy Mitsubishi with chrome wheels. After defendant parked his car, he was approached by uniformed CMPD Officers Nicholson and Williamson. Officer Nicholson addressed defendant in English, and defendant, who does not speak English, was non-responsive. Officer Williamson, who had taken four semesters of Spanish in high school and an additional four semesters of Spanish in college but was not fluent in the language, addressed defendant in Spanish. Officer Williamson asked if defendant had any guns, weapons, or drugs in the vehicle and defendant said no. Officer Williamson then pointed to defendant's car and asked if he could "look." Defendant nodded his head affirmatively. A search of defendant's car revealed heroin and cocaine hidden in the arm rest and in a can of WD-40 with a false bottom.

Defendant was arrested and taken to the Charlotte-Mecklenburg Law Enforcement Center. When CMPD Vice Detectives Lackey and Davis arrived, they asked Officer Williamson if he felt that he could Mirandize defendant and translate their questions. Officer Williamson indicated that he could. Officer Williamson and defendant began filling out a "Renuncia a Derechos (Adultos)/Adult Waiver of Rights" form written in Spanish. Defendant responded to Officer Williamson's questions about his age, date of birth, and education level. When

Officer Williamson questioned defendant about his address and Officer Williamson was unfamiliar with the location, he asked defendant to write the address down, which defendant did. Officer Williamson then read aloud the Spanish language waiver of rights form while defendant read along and initialed next to each *Miranda* right, which was written in Spanish.

Subsequently, Officer Williamson began translating Vice Detectives Lackey and Davis' questions into Spanish and translating defendant's answers into English. Defendant indicated that he had gone to Burger King to get a hamburger and had gotten the drugs from someone named "Luis" at a restaurant called "Acapulco." Defendant was in the interrogation room for approximately 20-30 minutes and gave coherent and appropriate answers to the questions asked.

On 5 December 2007, defendant made a motion to suppress all evidence seized from his vehicle and any statements made to the police on the grounds that the consent to search and waiver of *Miranda* rights were not made knowingly, voluntarily, or understandingly, and that the police lacked reasonable suspicion or probable cause to approach and search his vehicle. Following a 23 April 2008 hearing, the trial court denied defendant's motion to suppress. Defendant entered an *Alford* plea and was sentenced to 90-117 months in jail and ordered to pay a $100,000 fine. The record on appeal affirmatively reflects that defendant properly reserved his right to appeal the denial of his motion to suppress by giving timely notice in open court.

---

The standard of review for a trial court's order denying a motion to suppress is "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). If a defendant does not challenge a particular finding of fact, "such findings are presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (internal quotation marks omitted). "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

[1] Defendant contends the trial court erred by not suppressing evidence obtained from the warrantless search of defendant's car be-

cause his consent to search was not given voluntarily or unequivocally. Specifically, defendant maintains the consent was rendered involuntary or equivocal by Officer Williamson's lack of fluency in Spanish coupled with his wearing of a sidearm while seeking the consent. Similarly, defendant contends the trial court also erred by not suppressing his statement when his *Miranda* warnings were given by an officer who was not fluent in Spanish. Defendant claims that Officer Williamson's non-fluent *Miranda* warnings prevented defendant from knowingly waiving his rights, and thus contends "[w]ithout a finding of fact that Officer Williamson was fluent in Spanish and that [defendant] understood Williamson, there can be no valid . . . waiver of Miranda rights."

"Evidence seized during a warrantless search is admissible if the State proves that the defendant freely and voluntarily, without coercion, duress, or fraud, consented to the search." *State v. Williams*, 314 N.C. 337, 344, 333 S.E.2d 708, 714 (1985). Whether consent to a search was given voluntarily is a question of fact determined from the totality of the circumstances. *State v. Brown*, 306 N.C. 151, 170, 293 S.E.2d 569, 582 (1982). However, "voluntariness" does not require proof that defendant knew he had the right to refuse to consent to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 36 L. Ed. 2d 854, 867 (1973).

Likewise, for a valid waiver of *Miranda* rights, the State must prove, by a preponderance of the evidence, *see State v. Johnson*, 304 N.C. 680, 685, 285 S.E.2d 792, 795 (1982), that the defendant waived his rights "voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 707 (1966). "Whether a waiver is knowingly and intelligently made depends on the specific facts and circumstances of each case, including the background, experience, and conduct of the accused." *State v. Simpson*, 314 N.C. 359, 367, 334 S.E.2d 53, 59 (1985) (citing *Edwards v. Arizona*, 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, *reh'g denied*, 452 U.S. 973, 69 L. Ed. 2d 984 (1981)). As with a consent to search, when the voluntariness of a waiver of rights is at issue, we consider the same totality of the circumstances. *State v. Wallace*, 351 N.C. 481, 520, 528 S.E.2d 326, 350 (2000).

After carefully examining the record and weighing the totality of the circumstances, we conclude defendant's argument that his consent was not voluntarily given is without merit. Defendant was non-responsive to Officer Nicholson's initial communications in English, but responded appropriately to Officer Williamson's questions in

Spanish. Officer Williamson testified that he asked defendant simple questions in Spanish about whether defendant had any weapons or drugs in the vehicle. Defendant responded in the negative. Immediately thereafter, Officer Williamson gestured to the car and asked to "look." Defendant nodded his head affirmatively. As this Court has previously stated, consent need not be given verbally to be effective; nonverbal conduct may suffice. *State v. Graham*, 149 N.C. App. 215, 219, 562 S.E.2d 286, 288 (2002).

In addition, while Officer Williamson was not fluent in Spanish, the record shows he had extensive instruction and experience speaking Spanish, both in high school and college. The record reflects that defendant and Officer Williamson conversed entirely in Spanish throughout defendant's encounter and subsequent arrest by CMPD, for periods of up to 30 minutes. The record also reflects that defendant and Officer Williamson communicated at length and in-depth with Officer Williamson asking open-ended questions and defendant answering appropriately with complete phrases that extended beyond yes or no responses. Defendant answered questions about his age, date of birth, and education level. At Officer Williamson's request, defendant wrote down his address. Defendant answered open-ended questions about why he was at Burger King, as well as questions about where and from whom he had gotten the drugs. The record does not reflect that defendant ever indicated that he did not understand a question or that he gave an inappropriate response to a question asked. Moreover, defendant cites no authority requiring or even suggesting that Officer Williamson need be fluent in Spanish before communicating with defendant in the context of a waiver of rights. Conversely, in a situation where a language barrier existed between a defendant and a police officer, our Supreme Court held a voluntary waiver of rights existed when defendant simply gave "logical responses to the questions asked." *State v. Mlo*, 335 N.C. 353, 366, 440 S.E.2d 98, 104 (1994). Moreover, while not binding authority, several United States Circuit Courts have considered language barriers between defendants and police with similar results. *See, e.g., United States v. Querubin*, 150 Fed. App. 233, 234-35 (4th Cir. 2005) (holding that a waiver of rights was valid when defendant "answered the questions . . . with detail"); *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999) (holding voluntary consent may be found by examining defendant's "ability to interact intelligently with the police"); *United States v. Alvardo*, 898 F.2d 987, 991 (5th Cir. 1990) (finding voluntary consent where there was "adequate understanding of [the language] to fully comprehend the situation"). Here, the record shows

that defendant gave logical, intelligent, and detailed answers to Officer Williamson's questions, demonstrating full comprehension of the situation.

Finally, the record shows that defendant was not intimidated, threatened, or promised anything in order to gain his consent for the search, nor was he handcuffed or restrained in any way while the search took place. Defendant was free to withdraw his consent at anytime, but he did not. Additionally, the officers' firearms were never drawn, and the mere presence of a holstered sidearm does not serve to coerce defendant or render consent involuntary. *See State v. Sokolowski*, 344 N.C. 428, 433, 474 S.E.2d 333, 336 (1996) (finding voluntary consent to search when the facts indicate that eight deputies yelled at and drew their sidearms on defendant).

Considering the totality of the circumstances, we conclude there is competent evidence to support the findings of fact that defendant was properly queried for permission to search and that defendant consented to the search by nodding his head affirmatively. Those findings of fact in turn support the trial court's ultimate conclusions of law that defendant voluntarily consented to the search of his vehicle and at no time did defendant withdraw his consent. Accordingly, defendant's assignment of error concerning consent is overruled.

**[2]** Likewise, defendant's assignment of error concerning his *Miranda* waiver is without merit. As previously discussed, the evidence shows that Officer Williamson and defendant communicated effectively, despite Officer Williamson's lack of fluency. Again, the record indicates that defendant gave coherent, logical, and appropriate answers to the questions asked. Moreover, we note that when Officer Williamson informed defendant of his *Miranda* rights, he was not even translating English into Spanish, but rather reading aloud in Spanish from a Spanish version of a *Miranda* waiver of rights form.

Even assuming, *arguendo*, that defendant did not understand Officer Williamson when he read the *Miranda* warning to defendant, this alone would not frustrate a valid waiver. The record reflects that defendant appeared to read each *Miranda* right which was written in Spanish, initialed next to each *Miranda* right, and signed the form indicating he understood his rights. Officers are not required to orally apprise a defendant of his or her *Miranda* rights to effectuate a valid waiver. *State v. Strobel*, 164 N.C. App. 310, 314, 596 S.E.2d 249, 253

(2004). A signed written waiver may suffice. *Id.* We also note our decision in *State v. Ortez*, 178 N.C. App. 236, 631 S.E.2d 188 (2006), where this Court held that a Spanish-speaker who was read a flawed translation of his *Miranda* rights still validly waived his rights because "the warnings given to defendant were sufficient to reasonably convey to defendant each of his *Miranda* rights . . . ." *Id.* at 246, 631 S.E.2d at 196.

In considering the totality of the circumstances, we hold that there was competent evidence to support findings of fact and conclusions of law that defendant "understood his rights, knowingly waived those rights, and consented to speak with Detectives." Accordingly, defendant's assignment of error concerning his *Miranda* waiver is overruled.

[3] Finally, defendant contends the evidence does not support a finding that the "confidential source" was reliable under the confidential informant analysis, or that the source provided sufficiently detailed information under the anonymous tipster analysis, and contends the trial court erred when it concluded as a matter of law that, "[f]rom the totality of the circumstances, there was probable cause for the search based on both the confidential informant analysis and the tipster analysis." Because we have determined that the defendant consented to the search, it renders unnecessary any discussion of whether the police had probable cause to search the vehicle.

Affirmed.

Judges BRYANT and ELMORE concur.