An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1215

Filed: 18 August 2015

Mecklenburg County, No. 12 CRS 254000

STATE OF NORTH CAROLINA,

v.

JONQUAN MONTREIL YOUNG, Defendant.

Appeal by defendant from judgment entered 28 April 2014 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 March 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Mary S. Mercer, for the State.*

> *Willis Johnson & Nelson, PLLC, by Drew Nelson, for defendant-appellant.*

GEER, Judge.

Defendant Jonquan Montreil Young pled guilty to the charge of possession with intent to sell or deliver cocaine ("PWISD") and now appeals the denial of his motion to suppress incriminating evidence seized during a strip search. On appeal, defendant primarily argues that this evidence should be excluded because no warrant was obtained prior to performing the strip search, and the strip search was not otherwise justified because there was no specific showing that it was necessary for officer safety or to preserve evidence. However, defendant does not challenge the

contemporaneous nature of the search with his arrest, and he does not suggest that the strip search was unreasonable under the circumstances. Because it is well settled that officers are categorically entitled to perform searches of an arrestee's person incident to a lawful arrest, we affirm.

Facts

On 14 December 2012, defendant was a passenger in Michael Denkins' vehicle when, during a stop on Linwood Avenue in Charlotte, North Carolina by Officers Chad Shingler and Daniel Bignall of the Charlotte-Mecklenburg Police Department, drugs were found in the vehicle. Defendant and Mr. Denkins were then arrested and taken to the police station where the officers conducted a strip search of defendant and discovered that he had been concealing cocaine between the cheeks of his buttocks. Defendant was indicted for PWISD and possession of marijuana.[1] Defendant filed a motion to suppress the evidence seized as a result of the strip search.

The trial court held a suppression hearing on 11 October 2013 at which both Officers Shingler and Bignall testified. Defendant presented no evidence. After the hearing, the trial court entered an order with findings of fact and conclusions of law. None of the trial court's findings are challenged on appeal, and they are, therefore,

---

[1]The record only contains the indictment for PWISD, although the transcript indicates that defendant was also charged with possession of marijuana. The record indicates that the State later dismissed the possession of marijuana charge.

"binding on appeal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). The order's findings of fact include the following.

When Officer Bignall pulled over Mr. Denkins' vehicle for having a broken headlight, defendant was in the front passenger seat. After Officer Bignall approached Mr. Denkins and asked him for his driver's license, he checked for any outstanding warrants on both Mr. Denkins and defendant but found none. Then, when Officer Shingler arrived, Officer Shingler walked over to the passenger side of the vehicle and noticed defendant sitting in the front passenger seat with the window rolled up, looking straight ahead, and breathing rapidly. Officer Shingler smelled marijuana coming from the vehicle. Officer Bignall had Mr. Denkins step out of the vehicle, and Officer Bignall obtained consent to search Mr. Denkins' person and his vehicle. Officer Shingler then had defendant step outside of the vehicle, and Officer Shingler decided to search defendant's person.

A search of Mr. Denkins' person turned up nothing. As Officer Shingler searched defendant, he ran his hand between defendant's legs. Officer Shingler noticed that "defendant's butt cheeks were clenched together very tight." The trial court made findings regarding the officers' extensive training and experience in identifying narcotics and detecting when and where a person is concealing narcotics. It also noted Officer Shingler's testimony that when he performs a body search and asks a suspect to relax his or her buttocks, that person will comply with the request

90% of the time. In this case, Officer Shingler asked defendant to relax his buttocks multiple times, and although defendant was verbally cooperative with Officer Shingler, defendant failed to comply with Officer Shingler's request to relax his buttocks.

Based on defendant's behavior, Officer Shingler suspected defendant was concealing drugs between the cheeks of his buttocks. However, while at the scene, neither Officers Shingler nor Bignall removed any of defendant's clothing, nor did they peek into his clothing or pull back his waistband. While the officers noticed an aroma of marijuana coming from defendant's person that they did not notice on Mr. Denkins, they found no contraband on defendant's person at the scene.

Nonetheless, a search of the vehicle turned up a clear plastic baggy between the driver's seat and the center console which Officer Bignall believed to contain marijuana, as well as a baggy under the driver's seat that he believed contained cocaine residue. Both defendant and Mr. Denkins were arrested for possession of those drugs; defendant was specifically arrested for possession of the marijuana found in the vehicle.

After arriving at the police station, Officers Shingler and Bignall led defendant into a private bathroom and shut the door. Officer Shingler had defendant remove his clothing. After much urging by Officer Shingler, defendant "finally relaxed his posture such that Officer Shingler was able to see, lodged between his buttocks, a

clear plastic baggy, which he, with latex gloves, then removed and saw, based on his training and experience, what he believed to be cocaine, 1.4 grams." Officer Shingler seized and placed this baggy into evidence.

Based on these findings, the trial court concluded that Officers Shingler and Bignall had probable cause to arrest defendant for the crime of marijuana possession. Further, "[b]ased upon the nervous nature of the defendant in the vehicle, the odor of marijuana on his person, the manner in which he clenched his buttocks when the officers attempted to search in that area and all the other factors and based upon the totality of the circumstances, the search in this case was based upon sufficient probable cause."

The trial court also concluded that "[t]he search of the defendant at the police station would be justified in this case, either as a legitimate search incident to the arrest of the defendant or based upon the probable cause established at the traffic stop." The court further determined that the fact that the search was not conducted in plain public view on the side of Linwood Avenue but rather at the police station was in deference to defendant's privacy rights and that "[t]he search at the police station in the bathroom was a legitimate balance of the officer's right to search the defendant and the defendant's right to privacy." Finally, the trial court concluded that the search of defendant at the police station "did not violate the defendant's Constitutional rights, either Federal or State."

Based on these conclusions, the trial court denied defendant's motion to suppress. On 28 April 2014, defendant entered into a plea agreement whereby he would plead guilty to PWISD in exchange for a suspended sentence of eight to 19 months imprisonment and probation for 18 months as well as dismissal of his remaining charge of marijuana possession. That same day, defendant pled guilty to PWISD and was sentenced according to his plea agreement. Defendant timely appealed to this Court.[2]

Discussion

The standard of review for a trial court's order denying a motion to suppress is

> "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). . . . "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

*State v. Medina*, 205 N.C. App. 683, 685, 697 S.E.2d 401, 403 (2010).

Defendant argues that only a warrant would have justified the search and challenges the conclusion that the strip search was either justified as a search incident to arrest or as a search conducted under exigent circumstances. "The Fourth Amendment to the United States Constitution protects individuals 'against

---

[2]The record indicates, and the State does not contest, that defendant reserved the right to challenge the denial of his motion to suppress upon the entry of his guilty plea.

unreasonable searches and seizures[.]' " *State v. McKinney*, 361 N.C. 53, 57, 637 S.E.2d 868, 871 (2006) (quoting U.S. Const. amend. IV). "Generally, a warrant is required for every search and seizure, with particular exceptions." *State v. Armstrong*, ___ N.C. App. ___, ___, 762 S.E.2d 641, 643 (2014).

One exception provides that " '[a] warrantless search is lawful if probable cause exists to search and the exigencies of the situation make search without a warrant necessary.' " *State v. Malunda*, ___ N.C. App. ___, ___, 749 S.E.2d 280, 283 (quoting *State v. Mills*, 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991)), *disc. review denied*, 367 N.C. 283, 752 S.E.2d 476 (2013). " '[Another] well-recognized exception to the warrant requirement is a search incident to a lawful arrest. Under this exception, . . . an officer may conduct a warrantless search of the arrestee's person and the area within the arrestee's immediate control.' " *State v. Carter*, 200 N.C. App. 47, 50-51, 682 S.E.2d 416, 419 (2009) (quoting *State v. Logner*, 148 N.C. App. 135, 139, 557 S.E.2d 191, 194 (2001)). A search may be justified as incident to lawful arrest if "[the] warrantless arrest is . . . based upon probable cause," *Mills*, 104 N.C. App. at 728, 411 S.E.2d at 195, and the search is " 'substantially contemporaneous with the arrest.' " *State v. McHone*, 158 N.C. App. 117, 119, 580 S.E.2d 80, 82 (2003) (quoting *State v. Jackson*, 280 N.C. 122, 126, 185 S.E.2d 202, 205 (1971)).

We need not address whether the strip search was made with probable cause and under exigent circumstances because the search was made incident to arrest.

"The search incident to a lawful arrest exception has resulted in two different formulae. The first concerns searches of the *person* arrested and the second concerns searches of the *area* within the control of the arrestee." *State v. Nesmith*, 40 N.C. App. 748, 750, 253 S.E.2d 594, 595 (1979). In *United States v. Robinson*, 414 U.S. 218, 235, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477 (1973), the United States Supreme Court held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

Our appellate courts have recognized *Robinson's* categorical rule allowing a full search of the person incident to a lawful arrest. *See Nesmith*, 40 N.C. App. at 751, 253 S.E.2d at 596 (recognizing *Robinson's* holding). *See also State v. Brooks*, 337 N.C. 132, 144-45, 446 S.E.2d 579, 587 (1994) (recognizing under *Robinson*, involving search of vehicle incident to arrest, that officers "do not need to consider the particular defendant's dangerousness or the likelihood that the defendant may destroy evidence before they conduct their search").

Although the search of a person may be authorized as incident to arrest, our appellate courts have recognized that " '[t]he Fourth Amendment precludes . . . those intrusions into privacy of the body which are unreasonable under the circumstances.' " *State v. Norman*, 100 N.C. App. 660, 663, 397 S.E.2d 647, 649 (1990) (quoting *State v. Cobb*, 295 N.C. 1, 20, 243 S.E.2d 759, 770 (1978)). This is because

" '[d]eeply imbedded in our culture . . . is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their private parts observed or touched by others.' " *State v. Stone*, 362 N.C. 50, 55, 653 S.E.2d 414, 418 (2007) (quoting *Justice v. City of Peachtree*, 961 F.2d 181, 191 (11th Cir. 1992)).

In contesting the legality of his strip search, defendant does not challenge the conclusion that he was arrested with probable cause, nor does he dispute that the strip search was made contemporaneously to his arrest. Rather, defendant contends that the facts of his particular case could not have justified the search of his person as incident to arrest: because defendant was "handcuffed, under the direct, physical control of the officers, and confined to the 'prisoner bathroom' at the time of the strip search[,]" the warrantless search "neither ensured officer safety nor preserved evidence[.]"

In support of his argument that the officers could not search his person without a warrant unless it was necessary for officer safety or the preservation of evidence, defendant relies on *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). While *Chimel* addressed the legality of a search of the arrestee's entire house following his arrest, 395 U.S. at 755, 23 L. Ed. 2d at 689, 89 S. Ct. at 2036, rather than the legality of a warrantless search of an arrestee's person, it was at one point cited as supporting defendant's proposition. *See United States v. Robinson*, 447

F.2d 1215, 1226 n.8 (D.C. Cir. 1971) (Wright, J., dissenting) (suggesting that under *Chimel's* safety and evidentiary justifications for searches incident to arrest, "the only kind of search justified automatically by a lawful arrest is the evidentiary search"), *rev'd*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973).

However, four years later, the United States Supreme Court in *Robinson* explicitly rejected the need for "a case-by-case adjudication," explaining that "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." 414 U.S. at 235, 38 L. Ed. 2d at 440, 94 S. Ct. at 477. *Robinson* and not *Chimel* is the controlling authority.

Defendant also urges that we extend the rule set out in *State v. Thomas*, 81 N.C. App. 200, 343 S.E.2d 588 (1986), to searches of an arrestee's person. *Thomas* addressed the warrantless search of an arrestee's locked suitcase which "was not, at the time of defendant's arrest, 'immediately associated' with defendant's person." *Id.* at 211, 343 S.E.2d at 594. In *Thomas*, this Court held that because "[d]efendant could not have reached the contents of the locked suitcase. . . [which was] effectively reduced to the agents' exclusive control . . . , the agents could not lawfully search it without first obtaining a warrant." *Id.*

- 10 -

Defendant urges that the reasoning of *Thomas* requiring a warrant to search the locked luggage in that case applies "with equal force" in situations where the arrestee's person is in the exclusive control of police officers. This contention, however, cannot be reconciled with *Robinson's* categorical rule authorizing searches of the person incident to arrest regardless of any actual concern about the loss of evidence or of officer safety. Like *Chimel*, *Thomas* did not address the search of an arrestee's person incident to arrest, and it, therefore, does not inform our analysis. We are bound by *Robinson*. *See State v. Elliott*, 360 N.C. 400, 421, 628 S.E.2d 735, 749 (2006) ("The Supreme Court of the United States is the final authority on federal constitutional questions.").

There can be no question that *Robinson* gives authority to officers to search an arrestee's person incident to his arrest regardless whether the facts of his case suggest actual officer safety or evidentiary concerns. Because defendant does not challenge the contemporaneous nature of his strip search, the only issue that could have been raised on appeal was whether the scope of the search as a strip search was reasonable under the circumstances. However, defendant cites no authority that the strip search in this case was unreasonable under the circumstances.

Most of our case law addressing the propriety of strip searches involves strip searches occurring on the side of the road. Nonetheless, in determining the reasonableness of any given strip search, this Court has explained that

> the trial court must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*State v. Fowler*, 220 N.C. App. 263, 266-67, 725 S.E.2d 624, 627-28 (2012) (internal citations and quotation marks omitted).

Defendant has not, however, made any argument that even if a search of his person was constitutionally permissible, the officers' performance of a strip search was unconstitutional. While in *State v. Battle*, 202 N.C. App. 376, 403, 688 S.E.2d 805, 824 (2010), this Court found unconstitutional a strip search conducted on the side of a street with traffic going by and in broad daylight, this Court recognized that, " '[o]rdinarily, when police wish to search the private areas of an arrestee's person incident to arrest, they should first remove the arrestee to a private location -- i.e., a private room in the stationhouse.' " *Id.* at 385, 688 S.E.2d at 813 (quoting *Starks v. City of Minneapolis*, 6 F.Supp.2d 1084, 1088 (D. Minn. 1998)). *See also State v. Robinson*, 221 N.C. App. 266, 282, 727 S.E.2d 712, 722 (2012) (upholding strip search "given that [the officer] had ample basis for believing that Defendant had contraband beneath his underwear and given that [the officer] took reasonable steps to protect Defendant's privacy"); *State v. Johnson*, 143 N.C. App. 307, 313, 547 S.E.2d 445, 450 (2001) ("[T]he search was conducted in a reasonable manner. The [male] defendant was taken into his bedroom and searched by two male officers. The officers did not

touch defendant, rather they instructed him to bend over and observed as the defendant spread his buttocks and moved his genitals. When the officers observed plastic protruding from the defendant, they asked that he remove the plastic which turned out to contain illegal contraband.").

Because the officers were entitled to conduct a search of defendant's person incident to his arrest and because defendant has failed to demonstrate that the strip search was, under the circumstances, an unreasonable search of the person, we hold that the trial court properly denied defendant's motion to suppress on the grounds that the search was a lawful search incident to arrest. We, therefore, need not address defendant's remaining argument that the motion to suppress should have been granted because the search was not justified under exigent circumstances.

AFFIRMED.

Judges ELMORE and INMAN concur.

Report per Rule 30(e).