STROUD, Judge.
 

 Defendant Trevor Wilks Forte ("defendant") appeals from his conviction of trafficking more than 14 grams, but less than 28 grams, of heroin by possession and of trafficking more than 14 grams, but less than 28 grams, of heroin by transportation. On appeal, defendant argues that his Fourth Amendment right against unreasonable searches was violated because the trial court allowed the State to retrieve location information from his cell phone without a search warrant. Because defendant did not present any constitutional argument before the trial court, he has waived review of this issue on appeal. The trial court correctly determined that issuance of the pen register and trap and trace order was proper under N.C. Gen. Stat. § 15A-263, so we affirm the trial court's denial of defendant's motion to suppress.
 

 Facts
 

 In addressing the suppression motion before trial, the trial court heard these facts. On 8 November 2012, Officer Charlie Espinoza ("Officer Espinoza") of the Greenville Police Department contacted Detective Steven Cottingham ("Detective Cottingham") of the Greenville Police Department and told him that a known drug dealer-Mr. Oliver-was in custody for a narcotics investigation. Detective Cottingham spoke with Mr. Oliver, who said that he "had been selling bundles of heroin in the New Town housing project" for approximately two or three months he bought from a black man from New York he only knew by the nickname "Roam."
 
 [1]
 
 Mr. Oliver did not know Roam's real name but said "he was a shorter brown-skinned male that wears fitted baseball caps."
 

 Mr. Oliver explained to Detective Cottingham that "over two months, he was buying two bricks of heroin from the subject known as Roam every two or three days, and he said maybe thirty bricks over that time period." Mr. Oliver would pay $300.00 per brick of heroin and made the purchases randomly, not as part of any consistent schedule. Mr. Oliver then explained to Detective Cottingham in more detail that:
 

 Roam always comes to [Mr. Oliver] before he travels to New York in order to purchase heroin, and ... [Mr. Oliver admitted] to giving Roam $2,500.00 to put in on the heroin, and even helped him purchase a rental car. And ... the first of the month Roam traveled to New York to purchase a large quantity of heroin, but only stayed in New York a couple of days; and ... Roam purchased a rental car ... in Greenville[.]
 

 On 10 November 2012, Mr. Oliver called Detective Cottingham and informed him he spoke with Roam on the same phone number he had previously used and Roam "advised
 
 *341
 
 he was going to be in New York and will be returning soon with some heroin." Mr. Oliver told Detective Cottingham that Roam said he would be driving a car that belonged to a local white female heroin user with the last name "Hamilton" who was possibly under arrest in Pitt County Detention Center. Mr. Oliver explained that the vehicle was a small black Hyundai or Honda hatchback vehicle with a small rope holding down the hood and said that Roam would be a passenger in the vehicle with a female driving because Roam had no driver's license. Mr. Oliver noted that Roam owed him $1,000.00 worth of heroin, so part of the heroin Roam was supposed to be bringing from New York would be for Mr. Oliver. Roam would typically call Mr. Oliver right before he got on the road headed to North Carolina. Mr. Oliver further stated that when Roam got to Greenville from New York, it would probably be early morning and he would take the heroin to a local hotel room and distribute the heroin from there, and Roam would probably call Mr. Oliver before arriving at this hotel.
 

 Mr. Oliver gave Detective Cottingham Roam's phone number, and Detective Cottingham applied for and obtained a court order titled "Order Authorizing Pen Register/Trap and Trace and Disclosure of Records and Other Information Pursuant to
 
 18 USC § 3123
 
 and 2703(d)" signed by a superior court judge, which enabled the SBI to receive GPS location information of the cell phone, monitor it, and then notify Detective Cottingham of the phone's location and the direction of travel. The order was signed and registered on 11 November 2012.
 

 Early in the morning on 12 November 2012, an SBI agent informed Detective Cottingham that the phone was in New York traveling south. Detective Cottingham and other officers knew a couple of potential routes to Greenville from the north, so they went to those areas to try to intercept the vehicle. At 6:01 a.m., an SBI agent told Detective Cottingham that the phone was in Virginia traveling towards North Carolina. Mr. Oliver called Detective Cottingham around 6:45 a.m. and said that Roam had called him from the same number as usual and said that he was about 30 minutes from Greenville. Officers spotted the vehicle, a small black four-door Honda, at 7:50 a.m. on Highway 11. It was traveling south into Greenville on Memorial Drive; a black female was driving and a black male was in the passenger seat. Officers followed the vehicle southbound on Memorial Drive into Greenville until Officer Espinoza and another office conducted a traffic stop on the vehicle just before 8:00 a.m. "on North Memorial Drive near Airport[.]" One of the officers conducting the stop called Detective Cottingham at 8:05 a.m. and said that "both subjects were extremely nervous" and stated that "the female driver consented to the search of the vehicle[.]" A canine alerted on the vehicle and the heroin was located during a later search under the back seat. Defendant was identified as the passenger in the car and had a cell phone matching the pen register number.
 

 Defendant was arrested on 12 November 2012 on charges of trafficking more than 28 grams of heroin by possession and trafficking more than 28 grams of heroin by transportation. Then on or about 29 September 2014, defendant was indicted on the offenses of trafficking more than 14 grams, but less than 28 grams of heroin by possession and trafficking more than 14 grams, but less than 28 grams of heroin by transportation. Before a jury was impaneled, the trial court heard various pretrial motions, including defendant's 11 August 2015 motion to suppress all evidence of "any seizures, arrest, detentions, and wire taps of [defendant] based on information provided by Michael Oliver."
 

 On 11 August 2015, after hearing arguments on defendant's motion to suppress, the court orally stated that defendant's motion to quash the search warrant and order was denied and then entered two written orders, which were file stamped on 25 August 2015: one regarding the stop of the vehicle and one on the search of the vehicle. In the order on the stop of the vehicle, the trial court made detailed findings of fact, essentially as summarized in the facts above, and denied defendant's motion to suppress the application and order authorizing a pen register/trap and trace and his motion to suppress the stop of the vehicle defendant was riding in on 12
 
 *342
 
 November 2012. The trial court's only conclusions of law relevant to the arguments on appeal are:
 

 2. That Officer Espinoza had reasonable suspicion based on articulable facts that the vehicle was carrying a controlled substance, and further that the vehicle was following another vehicle too closely in violation of Chapter 20 of North Carolina General Statutes.
 

 3. That pursuant to N.C.G.S. 15A-263, the Order authorizing the pen register was properly issued.
 

 Defendant's trial began later that same day, 11 August 2015. At the close of the State's evidence, defendant moved to dismiss the charges against him, but his motion was denied. Defendant was ultimately found guilty of both trafficking charges. Defendant timely appealed to this Court.
 

 Discussion
 

 On appeal, defendant presents the issue as whether "Defendant-Appellant's Fourth Amendment right against unreasonable searches [was] violated by the issuance of a Pen Register/Trap and Trace Device Order for real time location information from his cell phone?" He argues that the trial court violated his constitutional right against unreasonable searches by denying defendant's motion to suppress and allowing the State to present evidence of real-time location information from his cell phone, which was retrieved without a search warrant. But we must first determine whether defendant has preserved his arguments on appeal by presenting them first before the trial court.
 

 On the day trial was to begin, defendant filed a motion to suppress. The entire substance of the motion is one sentence: "The state shall be ordered to suppress any seizures, arrest, detentions, and wire taps of [defendant] based on information provided by Michael Oliver." The motion is accompanied by his counsel's affidavit, which avers:
 

 2. That Officer D. S. Cottingham and C. Espinoza, Greenville Police Department interviewed Michael Oliver on November 8, 2012 after arresting Oliver for possession of crack cocaine.
 

 3. The officers in the discovery provided to the defendant in this case ... detail that NO promises were made for Oliver's assistance.
 

 4. The officers provide there was only one meeting on November 8, 2012 with Oliver.
 

 5. Oliver never provides an actual name of anyone.
 

 6. Oliver only uses a nickname for someone.
 

 7. Oliver has only known the person for 2 or 3 months.
 

 8. Oliver states he is unsure of when this person will arrive in North Carolina.
 

 9. The information provided by Oliver is insufficient to allow the issuance of a search warrant.
 

 10. The information is not proven reliable.
 

 11. The information is not shown to be specific.
 

 12. The information is not shown to be credible.
 

 When the case was called for trial, the trial court noted that the motion itself set forth no grounds. The State objected to its consideration, since it was filed the day before trial and the affidavit was provided only that morning. The trial court agreed to consider the motion, stating "even though the motion to suppress does not contain any grounds, ... I'm not going to penalize the Defendant for his attorney's lack of proper form of pleading, and I'm going to hear evidence."
 

 During the argument of the motion to suppress, the trial court asked defendant to clarify the legal grounds of the motion as well as the evidence he was seeking to suppress. Defendant's argument treated the issue as the sufficiency of the information to support issuance of a search warrant:
 

 And to get a search warrant, I certainly understand-the search warrant should be in the file, but they essentially go to T-Mobile, get a search warrant, and then use that telephone number, Judge. The only thing I can argue, the four corners of that search warrant and those things have not been properly asserted in the four corners of that document. I'm not saying what the
 
 *343
 
 officers knew from their experience and training and things like that, they're entitled to that, but they didn't put it in the four corners of that document how they knew this Oliver fellow was reliable. He had not been watched go do a transaction and come back. There's no evidence of that. It's not in the discovery, and it is certainly not in the search warrant.
 

 So, Judge, if the State had a hunch, maybe, had a probably, maybe, but it takes more than that to get a search warrant. It takes more than that to stop an automobile. And in fact, my client was not driving the automobile. There's no allegation he was driving the automobile. In fact, the discovery, as I read it, says that this other lady, who is in this courtroom, she had the phone with an address of where they were going; not my client.
 

 The simple sentences that I listed in my affidavit, 10, 11, and 12, it's not reliable, and it's not specific, it's not credible. There's no evidence of that, Judge. And as to that, Judge, I would argue that the stopping of the automobile and the detention of my client was not lawful based on the Fourth Amendment.
 

 But no search warrant was issued in this case. Instead, the order in question was the trial court's "Order Authorizing Pen Register/Trap and Trace and Disclosure of Records and Other Information" entered under
 
 18 U.S.C. § 3123
 
 and the Stored Communications Act ("SCA"),
 
 18 U.S.C. § 2703
 
 (d). Later in the argument, defendant's counsel noted that he was actually addressing the order allowing "[t]he wire tap, telephone trace; sometimes called a trap. They're traps where the information is pinged off, where a specific phone number is pinged off of." Defendant made no other argument regarding the Fourth Amendment and never mentioned the Stored Communications Act or North Carolina General Statutes Chapter 15A, Article 12 at the hearing.
 

 Although the trial court heard defendant's motion to suppress, despite its late filing and lack of grounds, on appeal we can consider only the grounds actually presented before the trial court.
 
 See, e.g.,
 

 State v. Hernandez
 
 ,
 
 227 N.C. App. 601
 
 , 608,
 
 742 S.E.2d 825
 
 , 829 (2013) ("According to well-established North Carolina law, where a theory argued on an appeal was not raised before the trial court, the argument is deemed waived on appeal.... Thus, a criminal defendant is not entitled to advance a particular theory in the course of challenging the denial of a suppression motion on appeal when the same theory was not advanced in the court below." (Citation, quotation marks, and brackets omitted));
 
 State v. Edmonds
 
 ,
 
 212 N.C. App. 575
 
 , 577-78,
 
 713 S.E.2d 111
 
 , 114 (2011) ("Generally, error may not be asserted upon appellate review unless the error has been brought to the attention of the trial court by appropriate and timely objection or motion. Objections must state the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. Failure to make an appropriate and timely motion or objection constitutes a waiver of the right to assert the alleged error on appeal. Constitutional errors not raised by objection at trial are deemed waived on appeal. A thorough review of the record in this case gives us no indication that defendant raised any constitutional grounds or argument as to any of the issues which the defendant now argues on appeal. Since those constitutional arguments were not raised by a specific objection at trial, those arguments are waived." (Citations, quotation marks, brackets, and ellipses omitted)).
 

 On appeal, defendant presents the issue as whether "Defendant-Appellant's Fourth Amendment right against unreasonable searches [was] violated by the issuance of a Pen Register/Trap and Trace Device Order for real time location information from his cell phone?" Specifically, defendant now contends that the "Trial Court violated the Defendant's Constitutional Right against Unreasonable Searches by allowing the State to retrieve Real Time Location Information from his Cell Phone Without a Search Warrant." Most of defendant's brief is devoted to discussion of the Stored Communications Act's requirements, cases interpreting the Stored Communications Act as it applies to real-time location information, the application of the Fourth Amendment to these "real
 
 *344
 
 time" searches, and the lack of probable cause to support issuance of a search warrant. Defendant made none of these arguments to the trial court. The trial court ruled on the only issue defendant argued, and concluded that "pursuant to N.C.G.S. 15A-263, the Order authorizing the pen register was properly issued." Defendant's only argument before the trial court was that law enforcement did not have sufficient evidence to support issuance of the pen register order. The trial court ruled on this issue only, and this is the only argument we may consider on appeal.
 

 I. Standard of Review
 

 It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. However, conclusions of law are reviewed
 
 de novo
 
 and are subject to full review. Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.
 

 State v. O'Connor
 
 ,
 
 222 N.C. App. 235
 
 , 238-39,
 
 730 S.E.2d 248
 
 , 251 (2012) (citations, quotation marks, and brackets omitted). Defendant has challenged none of the trial court's findings of fact, so they are binding on appeal.
 
 See, e.g.,
 

 State v. Medina
 
 ,
 
 205 N.C. App. 683
 
 , 685,
 
 697 S.E.2d 401
 
 , 403 (2010) ("If a defendant does not challenge a particular finding of fact, such findings are presumed to be supported by competent evidence and are binding on appeal." (Citation and quotation marks omitted)).
 

 II. Stored Communications Act
 

 Here, Detective Cottingham applied for-and the trial court entered-an order authorizing a pen register for defendant's phone. This order differs from a search warrant, as the trial court's "Order Authorizing Pen Register/Trap and Trace and Disclosure of Records and Other Information" was entered under
 
 18 U.S.C. § 3123
 
 and the Stored Communications Act ("SCA"),
 
 18 U.S.C. § 2703
 
 (d). The order allowing the pen register authorized, in relevant part, the disclosure of:
 

 all published and non published subscriber records, call detail and data detail records, text or short message service records, IP addresses, telephone toll records, direct connect records, cellular tower and originating, handover and terminating cell site and sector information to include towers, switches, Global Positioning Location (GPS) without geographical limitations within the United States, timing advance, geolocation service, triangulation, E911, real time call detail records with coordinating real time cell site location information, historical call detail records to include cell site location information, IP address history. ...
 

 Under the SCA, the government is authorized to require disclosure under specific circumstances, including when the government gets a court order for such disclosure under
 
 18 U.S.C. § 2703
 
 (d) :
 

 A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity-
 

 (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;
 

 (B)
 
 obtains a court order for such disclosure under subsection (d) of this section
 
 ; [or]
 

 (C) has the consent of the subscriber or customer to such disclosure[.]
 

 18 U.S.C. § 2703
 
 (c)(1)(A)-(C) (emphasis added).
 

 The SCA requires less than probable cause and essentially only requires reasonable suspicion for issuance of an order for disclosure.
 
 See
 

 18 U.S.C. § 2703
 
 (d) ("A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the government entity offers
 
 specific and articulable facts showing that there are rea
 

 sonable grounds to believe
 

 *345
 
 that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." (Emphasis added)).
 
 See also
 
 N.C. Gen. Stat. § 15A-263 (2015) ("Issuance of order for pen register or trap and trace device"). Thus, a pen register order differs from a search warrant in that the standard to grant such an order is lower than probable cause; these orders authorize use of surveillance that does not require a search warrant.
 
 See
 

 Smith v. Maryland
 
 ,
 
 442 U.S. 735
 
 , 745-46,
 
 99 S.Ct. 2577
 
 , 2583,
 
 61 L.Ed.2d 220
 
 , 230 (1979) ("The installation and use of a pen register, consequently, was not a 'search,' and no warrant was required.").
 

 As noted above, the trial court's detailed findings of fact are not challenged on appeal. Detective Cottingham's application requesting the pen register and trap and trace order set forth detailed and extensive supporting facts. Detective Cottingham received information not from an anonymous source, but from an identified and known drug dealer, Mr. Oliver. "In evaluating the reliability of an informant's tip, due weight must be given to the informant's veracity, reliability, and basis of knowledge as highly relevant factors in determining whether an informant's tip is sufficient from the totality of circumstances."
 
 State v. Sanchez
 
 ,
 
 147 N.C. App. 619
 
 , 624,
 
 556 S.E.2d 602
 
 , 606-07 (2001). There are multiple indications of reliability in Mr. Oliver's statements, including that Mr. Oliver made substantial admissions against his penal interest.
 
 See, e.g.,
 

 State v. Jackson
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 505
 
 , 511 (2016) ("In order for a reviewing court to weigh an informant's tip as confidential and reliable, evidence is needed to show indicia of reliability. Indicia of reliability may include statements against the informant's penal interests and statements from an informant with a history of providing reliable information." (Citations, quotation marks, and brackets omitted)),
 
 aff'd per curiam
 
 ,
 
 370 N.C. 337
 
 ,
 
 807 S.E.2d 141
 
 (2017). Mr. Oliver admitted to buying and selling a large amount of heroin from Roam regularly, an admission against his penal interest. He also provided a nickname, general description of defendant, background information from dealing with him previously, and current travel information of the suspect. Mr. Oliver spoke with Detective Cottingham in person, after having been identified and brought in to custody, and they spoke more than once, adding to the reliability of his tip.
 
 See, e.g.,
 

 State v. Allison
 
 ,
 
 148 N.C. App. 702
 
 , 705,
 
 559 S.E.2d 828
 
 , 830 (2002) ("Foremost, the tip in this case came through a 'face-to-face' encounter rather than by an anonymous telephone call. Under this scenario [the officer] had an opportunity to observe the demeanor of the female informant in an effort to assess the reliability of her tip. Furthermore, by engaging [the officer] directly, the female informant significantly increased the likelihood that she would be held accountable if her tip proved to be false."). These facts, which are evident in the application for the order, lend sufficient reliability and credibility to the information Detective Cottingham received from Mr. Oliver. And defendant's phone number and where he would most likely be traveling in Greenville, North Carolina, was also identified in the application. Under the totality of the circumstances, the trial court had the necessary specific and articulable facts to show reasonable grounds to believe the records sought from the pen register order were relevant and material to an ongoing investigation.
 
 See
 

 18 U.S.C. § 2703
 
 (d).
 

 III. Fourth Amendment
 

 Defendant acknowledges that the evidence may have been enough to meet the lesser "reasonable grounds" standard in
 
 18 U.S.C. § 2703
 
 (d), but argues that the Fourth Amendment ultimately controls the issue, because the trial court's order allowed officers to collect real-time location information from defendant's cell phone, constituting a search under the Fourth Amendment for which a search warrant based upon probable cause is required. But as noted above, defendant failed to present this argument to the trial court. "Constitutional arguments not made at trial are generally not preserved on appeal."
 
 State v. Canty
 
 ,
 
 224 N.C. App. 514
 
 , 516,
 
 736 S.E.2d 532
 
 , 535 (2012).
 
 See also
 

 Edmonds
 
 ,
 
 212 N.C. App. at 578
 
 ,
 
 713 S.E.2d at 114
 
 ("A thorough review of the record in this case gives us no indication that defendant raised
 
 *346
 
 any constitutional grounds or argument as to any of the issues which the defendant now argues on appeal. Since those constitutional arguments were not raised by a specific objection at trial, those arguments are waived." (Citation omitted)). Although defendant mentioned the Fourth Amendment-briefly-before the trial court, he presented no argument regarding the distinction between real-time and historical data collection and the constitutional issues raised by potentially real-time information. His argument focused only on the reliability and sufficiency of the evidence supporting issuance of the pen register order, and the trial court correctly ruled only on that issue.
 

 Conclusion
 

 For the reasons stated above, we hold that the trial court did not err when it denied defendant's motion to suppress the evidence resulting from the pen register/trap and trace order. We therefore affirm the denial of the motion to suppress.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge TYSON concur.
 

 [1]
 

 According to Det. Cottingham, 10 small bags of heroin make up a "bundle;" a "brick" is five bundles, or 50 small bags.